The next case for argument is 24-2059, Performance Additives v. United States. Well gentlemen, we meet again. Thank you. The last two times I argued before the court I asked for an accommodation to address the court seated, but I'm going to try standing this time. Whatever makes you most comfortable. Thank you. May it please the court. This case presents a straightforward question of statutory interpretation. The question is whether, when in 2004, Congress in the Miscellaneous Trade and Corrections Act established a one-year limitation for liquidating drawback claims subject to up to three one-year amendments for a total of four years. I have some factual questions as well as the legal ones, Mr. Peterson. The CIT noted on July, and I'm quoting her, on July 28, 2020, Customs advised Performance that its drawback privileges were suspended. Why? Why were they suspended? I think because they had concerns about the underlying merits of the case, but the privileges are not involved in this appeal. Okay. I was just curious about it. For the drawback claim at issue in this appeal, when did Customs purport to liquidate it, and where's that date in the record, because it seems— The drawback claim was filed on March 10 of 2020. The one-year anniversary on which the deemed liquidation should have occurred is March 10, 2021. Customs liquidated the entry on May 14, 2021, without drawback, so that was beyond the one-year anniversary for deemed liquidation specified in the statute. Where does the other date come up, then, in the red brief? They say April 30th. I'm not sure of the significance of an April 30th date, Your Honor. CPB liquidated the drawback claim at the amount of zero drawback. I'm quoting from the red brief. On April 30, 2021. If the April 30th date is the liquidation date, Your Honor, it would still be on the one-year anniversary. I understand that, but I'm asking about the discrepancy in the dates. There were some discrepancies in Customs records. The automated commercial environment numbers did not always line up, but it's clear and undisputed that when they liquidated this claim, no drawback, it was past the one-year anniversary specified by statute. On page 7 of your blue brief, footnote 3, you cite to appendix 27, for support to your proposition about how Customs styled its May 14, 2021, actions. I don't see any support on page 27. Well, in the appendix, the record shows that that was the date they reported as the date of liquidation. Now, the question was, was that a re-liquidation? And the answer is, it's not. They did not note any deemed liquidation on the anniversary date of March 10. And so there was no re-liquidation. First, the liquidation that was noted. The page 27 is a list of actions. We're on the same page. Oh, okay. And on what line would this be? I can't tell you what line. What you say is, it supports your proposition about how Customs styled its action. And I don't see anything that shows how they styled it. That's all. I believe, Your Honor, this may be not a record of the liquidation of the drawback claim, but rather a liquidation of the import entries that were included in the drawback claim. How does that answer my question, though, Mr. Petey? I'm just looking for support for what you said in the brief. And again, the specific issue? You cited page 27 to support your proposition about how Customs styled its May 14, 2021 action. That's at page 7 of your blue brief. Well, right. I mean, this is what we're looking at in page 27 is we're looking at a liquidation record, not a re-liquidation record. I see what you're saying. Okay. Gotcha. There had been no prior liquidation. So this is not re-liquidation. This is the initial liquidation of the claim. Thank you. Can I ask you about the statute? When does, well, firstly, were the entries here in this case, in this circumstance, before the one-year clock was out, were those entries liquidated and final by the one-year date? All of the import entries were liquidated. Some of them were not final in the government's view because they had not been liquidated for 180 days and were not beyond the statutory purpose. Okay. So except that is correct, that they were not all liquidated and final by that one-year time? Yes. Okay. So if we accept that, what else does B mean other than covering that circumstance? Doesn't B expressly cover that circumstance? No. B is a separate, standalone provision. Well, what it says is it's not standalone. It's, in fact, it's so mushed up with the others that A references B right up front, except as provided in B. So when you have these two provisions, except as, they're not standalone. Obviously, A is only read in connection with what's accepted under B. So I'm trying to figure out what's under B. Well, I don't think they're interconnected because there's also a reference to C. Okay. Which is a transitional provision. I don't think it's worth arguing about whether they're connected or interconnected. Okay. Just bear with me. In B, doesn't that perfectly describe the circumstance in this case at the one-year mark that not all of the underlying entries had been liquidated and became final? Well, that's correct, but this is the central error that we're discussing here, is the Court of International Trade read subsection B as a general limitation on the rule of deemed liquidation in subsection A. And I am saying it is not a general exception. It is a separate proceeding, separate process, individual, you know, separate from A. So, for example. But if B covers the circumstance here, I don't understand what your issue. Do you think the circumstance here is covered by both A and B, by both of them? In this case, B doesn't operate because when we got to the one-year anniversary, we had no unliquidated entries. The language of B precisely describes the situation in this case. No, not all of the import entities had been liquidated and became final within the one-year described in paragraph A. Doesn't that exactly describe what we're dealing with in this case? No, Your Honor, because section B operates independently from subsection A. So, for example. Even if we give you that they're independent, why is B not applicable here? Can you just answer that question? Well, B is not applicable here for a couple of reasons. First of all, the title of B is unliquidated entries. By the time we got to the anniversary date of our claim, we did not have any unliquidated entries. So, you can't say that B operated somehow. That's the title, but the text says liquidated and final. And you've conceded that your import entries here had not all been liquidated and final, correct? But that language appears in B. It does not appear in A. Okay, we're trying to understand your argument for why B does not apply. B does not apply. Well, it doesn't apply in this case because when we had not triggered it, we had not tried to make an application under it. When the one-year anniversary of our claim occurred, it really wasn't available to us because we did not have any unliquidated entries. Okay, explain to me, Mr. Peterson, what Congress meant when they used this language? Except as provided, this is at the very beginning of it, except as provided in subparagraph B. What'd they mean? They meant that you would be subject to the one-year anniversary unless you did something to get your drawback claim to liquidate apart from the one-year anniversary. Now, that could have been an affirmative liquidation by customs before the one-year anniversary. Or if I had unliquidated entries, let's say six months after I filed my claim, I could make an application under B and get a deemed liquidation, notwithstanding the fact that my import entries were unliquidated. So the fact of having unliquidated import entries is never a bar to getting your drawback and what's really interesting, I think we compared the regulation as it existed before Congress enacted the 2004 Act. But that one year, right, you say, you agree that it says except as provided in subparagraph B. And then B says, have not been liquidated and become final within the one-year period described in subparagraph A. Now, when it says become final within the one-year period described in subparagraph A, doesn't that kick back to the language except as provided in subparagraph B? No. Again, subheading B stands on its own. It would let me compel a deemed liquidation before my entry. You think it stands on its own, but the congressional language intertwines them both ways. Well, again, if you read it that way, the congressional language would intertwine C and C is totally standard.  No, C was a transition provision that operated before A even started operating. Is it your position that what happened here is under both A or B or it's not under B at all? It's not under B at all. But doesn't, haven't we gone through the language of B to demonstrate that it's describing in detail exactly what the situation is here? Well, the situation here is... How is it not covered by the situation in B? Leaving aside what A says, how is this not precisely what went down? Because B has to be triggered by an application from the drawback claimant. The drawback claimant has to have paid estimated duties and must make a request for customs to liquidate the entry, the drawback claim, on the basis of the estimated duties. We never triggered B. We never did that. We simply let our claim get to the one year anniversary. And at that point, it should have been deemed liquidated. So what's your response to the government says if that's the way the statute is read, you could potentially, I think they call it double dipping, because you could maintain a protest to the import entries and keep them from finalizing and get deemed liquidated or deemed final. I forget your drawback entries and recover the drawback and then recover through the import entries. Oh, you could only recover once. And there's a customs regulation. There's a customs regulation which says how you adjust if the import entries liquidate at a different amount. If they liquidate at a higher amount, the claimant pays 1% of the difference to customs. There'd at least be nothing in the statute on your reading that would prevent the double dipping. Uh, yeah, the regulations prevent the double dipping. Let's go back to your statutory interpretation. You say that if B is implicated, C must necessarily be implicated. Am I correct? Well, no, she was totally standalone as well. OK. But the problem, if I may, with the government's interpretation is this. So drop your C discussion altogether. Pardon? Drop your C discussion altogether. Yeah, we'll see what's adjudicated in the Ford Motor case. But here's the problem with the government's position. Hear me out. Under their view, if they don't have a deemed liquidation at the one-year anniversary because all the underlying import entries are not liquidated, quote, and final, then according to the government, the entire deemed liquidation statute does not apply. These entries, which constitute most drawback entries, are never subject to a time to liquidation. That's not what Congress intended in 2004. That's not true. It is true because, if you note in our main brief, we make reference to a 2019 government accountability study of drawback, where the drawback centers were saying, we have a backlog and it'll take us five more years to work through the backlog. That's not what Congress intended. Congress intended a four-year liquidation limit for drawback plans, exactly as they do for import entries. And they said so in so many words. Well, why don't we hear from the government? And we'll save, restore, save your rebuttal time. All right. Thank you, Your Honor. I made it. Your Honor, may it please the Court. The trial court's interpretation of the statute at issue accords with the plain terms of the statute. OK. Can I just cut to the chase? Of course. Some of us, if all of us, may think that the statute on its face is clear enough. But if we wanted to be extra, extra clear, am I correct that your reading of A would have inserted that all the designated import entries are liquidated and final by this date?  By the year after filing the claim. So as the trial court. So and you're implicitly moving that into A. So A, because A, first of all, as discussed previously, except as provided in subparagraph B or C. So now A applies if B or C doesn't. So now we're looking at B. And B specifically directs us in the instance in this case here. Have the import entries on the year after the period described in subparagraph A, which is a date one year from the date of the filing of the drawback claim. Have all the underlying import entries. Have they become liquidated and final. So as the trial court rightly positioned this case is what we're looking at in a claim is on the year anniversary of the filing of the claim. Have all the underlying import entries become liquidated and final. If they have, and if customs hasn't affirmatively liquidated that drawback claim by that point, then it becomes deemed liquidated under big A. A, A, right. Big A. But if all, and there's good reason for that as well too. Because if all, if there are no outstanding questions for the import entries that are being used as the basis to claim drawback, we know that those liabilities are fixed. They, they're not subject to an ongoing protest or, or administrative action or court challenge. There's no danger then of just those amounts now being potentially refunded as are being paid out to the drawback claimant and also to the importer, a sort of double payment, right? Because all those liabilities have been fixed under A, A prod CBP that if you don't affirmatively liquidate when all the underlying entries are final within that year, then it will deem liquidate by, at the amounts asserted by the claimant. So you agree. I mean, it could have been clearer if they had put that precise language in A, but your position is that's not necessary because clear, it can't be, it can always be clearer, but since A is what's not in B, B makes clear what it is. Right. So that brings us back to, so now we know what A is covering. Exactly. The statutes reference each other, except as provided in B, in subparagraph B or C, they both refer back to the same one year period. We're also, there's no, there's no elective preference of the claimant in here. It doesn't say, well, you could choose A or you could choose B or you could choose C. It says, no, we look to B to see if B or C applies first. And then if it does not, then potentially we're under A depending on the circumstances. I had the same, it's just a little point, but I had the same question that Judge Wallach asked earlier about this April 30th, 2021 date. Right. And that's, it's in the opinion below at page 13. So it's a little confusing because there were two claims down below before the trial court. Only one is on appeal. The one that's on appeal is the first claim, and that claim CBP liquidated on April 30th, 2021. The May 14th was claim two, which is not the subject of this appeal. I think that's where the confusion lies. And they want it moved back. They want the March date rather than the April date because that's the consequence of their getting something or not getting something. So the claim was filed on March 10th, 2020. So under their reading of the statute by March 20, 2021, full stop, because that's before the April 30th date, that's a year after the claim was filed. Their argument is that it will then therefore deem liquidant under A, but then that reads out B, which applies here because the underlying entries, which are the subject of their claim, they didn't all liquidate and become final within that, within the year period. But it's just on the ground consequences. The difference between what they're seeking here and this April 30th date is a big deal, right? Because on April 30th, they got zero. They got zero. The timing was zero. Whereas if they were under A, they would have gotten arguably the whole shebang. Well, no, not necessarily. Well, yeah. If it did fall under A, yes, because then there's that, once again, A is there. But if all the liabilities are fixed on the import entries. That would have never been true because all of the entries weren't liquidated and final. And so then what B provides. Logically, if it fell under A, it would mean that the situation here didn't exist. Exactly. Exactly. And B provides the safeguard in that situation where the claimant, if there are any non-final entries, it could still seek to get that claim deemed liquidated by operation of the law. But what it has to do is it has to comply with the safeguards of that statutory provision. And it's implementing CBP regulations, which is both the importer and the claimant saying that we are not going to seek any other payment other than, you know, what could be paid out in the drawback claim. That's the waiver part of B. That's the waiver part. You need that safeguard because then otherwise it runs the potential risk of a drawback claim being paid out to a claimant. And then on the import entries, on the import side, if those entries are still non-final because of a pending administrative protest or court action or suspension or what have you, if that's ultimately resolved in the importer's favor, well, then you've already paid out the drawback claimant. And now you're potentially refunding the duties to the importer as well. The double payment. Mr. Peterson says that's covered by regulations, so don't worry about it. Well, the reason why we need to not worry about it is under B, you need to assure customs that you're not going to be paid on that. You're waiving your right to those payments. That's the assurances. There's no other statutory requirement that you waive that. And on his view, we would lose that statutory protection, you're saying. The statutory protection right there is B. That is the statutory protection to guard against that scenario. What do you say about the heading of B only referring to unliquidated imports and not unliquidated and non-final? Yeah. Could it have been clearer if it said unliquidated and non-final in the heading of B? Yes. But B specifically refers to import entries that have not liquidated and become final. The text of the statute makes it clear that we're looking at non-final. And the finality, again, it's important because we don't know if the underlying import entries, if they're non-final, maybe that amount changes that could potentially be owed or refunded or collected on those underlying import entries. That's why we need that safeguard to waive collection on those import entries. What about C? I know it factually doesn't apply here. Right. But does it have relevance to the statutory interpretation and whether A and B are hermetically sealed, for instance? I think, once again, we go back to that first clause of A, except it's provided in subparagraph B or C. So now we're seeing, does B apply to this scenario? Here it does. Potentially in another scenario where an entry or claim is filed before that operative date in C, then we'd be under C. So again, we only get to A if B or C doesn't apply based on the accept clause of A. And the gray brief at 16, note 19, it says, under your logic, drawback claimants wishing to have the statutory time limits applied to their claims would be best served by filing their applications under B for deemed liquidations as soon as they file their claims. And this would overload the already stressed system. What's your response to that? But B specifically refers to, as the trial court reconciled these provisions and interpreted these provisions, you're looking at the status of those import entries a year after they're filed. Because if those import entries are liquidated and final, then we're under A. And if they're not, they're B. You can't file before. We need to know what the status of those import entries are on the year anniversary. So if on the year anniversary, if performances claims, all the underlying import entries have not liquidated and become final, then it could request a waiver at that. It could request the deemed liquidation that would be at that time, submit the necessary waivers by both the claimant and the importer to assure that there will be no double payments. So we need to look at the provision necessarily requires that year period. And then looking at the status of those underlying entries on that year period. It's not something to be invoked before. It's to be something to see whether it operates on the year after the claim has been filed. Mr. VanderWeef, performance says there are no disputed factual issues. Leaving aside the confusion about the dates, do you agree there are none? Yeah, there are no disputed factual issues. This is just statutory interpretation. And by the one year anniversary, some of the entries had been liquidated and final, but not all of them. Right, because there were 48 import entries. And they became final 180 days later between November 25th, 2020 and May 26th, 2021. And so a year after the claim was filed, March 10th, 2020 would be March 10th, 2021. So there was a period of about two and a half months there. Yeah, about two and a half months. And your version, I mean, and you read into the statute that all of the import entries that you can't slice and dice and say if some were, it's OK. Right, as long as one. As long as one is because the drawback claim is based on those amounts. We can't just have unreconciled or unknown liabilities on those underlying import entries. The claim needs to cover all of the import entries. I don't remember the briefing as well.  It's Thursday. But has this issue of A versus B and what's in A and what's in B been adjudicated before? Not before this court. It's something that's been before the CIT and the Ford case, as my colleague noted. But that case was more about the operative. That case discussed the interplay between all these provisions, but it mostly focused on the applicability of C in that circumstance. And now this case is as well as, I think, the first, in my understanding, to make it before this court. Should we take comfort with that and everybody understood it the way you understood it? Or should we just? I think we should take comfort in the fact that the trial court issued a fantastic decision just outlining how these procedures and the interplay works, and that we ask that this court affirm the trial court's decision. Thank you, Your Honor. Mr. Dwallet? Wait a minute. Mr. Dwallet? Anything else? Okay. Thank you. We'll restore two minutes. The problem with my learned friend's argument is that it completely yields an absurd and anomalous result, which Congress could not have intended with the 2004 Act. According to the government, if all the liquidated entries are not liquidated and final by the one-year anniversary, those entries, which is the majority of throwback claims, come right off the deemed liquidation statute. There is no deadline for ever liquidating them. And I cannot come in and use B to force a liquidation. In our case, we had no unliquidated entries. All our entries were liquidated. And therefore, we had no estimated duty. When was the last date? Pardon? When was the last date that they were liquidated and final? Some of the import entries were liquidated and final by the one-year anniversary. Some were not. The ones that were not, probably two, three months later. Let me ask you this. I'm going to take a little more than two minutes. You say in the blue brief at 3 and 4 and at 10 that Judge Rastani admitted inapplicability of B to performances claim. Judges generally don't admit things. So I look closely at that. And it seems to me you're taking the statements by the trial court out of context. I interpret the CIT's words to be explaining performance chose not to follow subparagraph B's steps to cause liquidation, where she says, the government contends and plaintiff concedes performance did not follow the procedure under subparagraph B, under the subparagraph B exception, to force customs to liquidate its drawbacks claims. Therefore, the time limits imposed by the drawback statute do not apply to the claim. And then she goes on and elaborates. It seems to me that she's not conceding anything. What she's saying is, this is how B applies. And you're taking that out of context. Well, Your Honor, that's the central issue in this appeal. Is B a general exception to the rule of deemed liquidation in A? And if it is, then there's never a time limit for most drawbacks. You're not answering my question, Mr. Peterson. Well, the answer to your question, Your Honor, is that the B procedure is an optional procedure. It's only triggered when the drawback claimant does something. We felt no need to do it. It's not a safeguard on A, because if I have my drawback claim liquidated on estimated duties, the drawback regulations say, well, it's an optional procedure. We didn't need to do it. I'm talking about the language of the opinion below. Of language of what? The opinion below. Again, the opinion below construes B as a general exception to the deemed liquidation rule of A. It produces an absurd result. So if you say that, then you're agreeing that she doesn't concede it is inapplicable. She doesn't concede it, but I think she's in error. Now, and I think the proof of the error is the fact that under the government's position, these drawback claims never have a time to liquidate. We couldn't force a liquidation under B in this case when the one-year anniversary blew by. So we had no unliquidated entries. We had no estimated duties. We only had liquidated duties. And the problem here is the government's interpretation absolutely writes the 2004 statute out of the books. Okay. We have your argument. Thank you. Thank you. We've got both sides of the cases submitted. That concludes our proceeding for this morning.